FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

SEP 30 AM 10:46

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

ROBERT M. OSBORNE, JR.; DONNA )
OSBORNE; and DR1, LLC; )
                              )
        Plaintiffs, )
                              )
v.                            )      CASE NO. CV411-143
                              )
DRAYPROP, LLC; DRAYPARK, LLC; )
MICHAEL BROWN; REUBEN CROLL;  )
and MARLEY MANAGEMENT, INC.;  )
                              )
        Defendants. )
_____)

## O R D E R

Before the Court are Defendants' Motions for Summary
Judgment (Doc. 9; Doc. 13; Doc. 60). For the following
reasons, Defendants' motions are **GRANTED**. Plaintiffs have
not shown any genuine issue of material fact to support
their claims of breach of contract, negligent
misrepresentation or fraud.[1] As a result, Plaintiff's other
claims for damages, punitive damages and attorney's fees
necessarily fail. Accordingly, Plaintiffs' case is hereby

---

[1] Plaintiffs attempt to assert new collateral estoppel and
statutory negligence claims in their various summary
judgment responses. (Doc. 30 at 15; Doc. 70 at 5.)
Although the Court finds both wholly without merit, the
Court need not consider either claim here as Plaintiffs may
not defeat summary judgment merely by adding new claims at
this stage. See Gilmour v. Gates, McDonald & Co., 382 F.3d
1312, 1315 (nonmovant may not raise new claims to defeat
summary judgment)

**DISMISSED.** The Clerk of Court is **DIRECTED** to close this case.

BACKGROUND

This case stems from Plaintiffs' purchase of a condominium unit of the Drayton Tower building in Savannah, Georgia.[2] (Doc. 30 at 2.) In making their purchase, Plaintiffs relied on various sales materials describing the planned development of the property. (Id. at 3-4.) Among the material Plaintiffs considered was a letter from former defendant Darby Bank & Trust Company ("DBT") that it would provide the necessary funds to cover the costs of certain promised repairs and improvements to Drayton Towers.[3] (Id.) Plaintiffs believe that the sales material provided them with an enforceable guarantee that the renovations would be completed by March 1, 2006. (Id. at 3.) Plaintiffs also state that, prior to their purchase, they discussed the possibility of asbestos in the building with Defendant

---

[2] For the purposes of this motion for summary judgment, the Court construes the facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986). Because the Court only addresses Defendants' motions, all facts are construed in the light most favorable to Plaintiffs.

[3] DBT was closed by the Georgia Department of Banking and Finance and placed under the receivership of the Federal Deposit Insurance Corporation ("FDIC"), which in turn replaced DBT as a defendant in this action. (Doc. 32 at 2.) As a result, DBT did not disburse any funds for the allegedly promised improvements.

Brown, who stated the building had been tested and found to be asbestos-free. (Doc. 66 at 2-3.)

In May of 2005, based on all of the above information, Plaintiffs purchased the entire eighth floor of the Drayton Tower building from non-party Mopper-Stapen Realtors with the intent to resell it at a later date. (Doc. 30 at 2.) Defendant Drayprop, LLC was the developer of Drayton Towers and Defendant Draypark, LLC was the owner of the parking lots adjacent to Drayton Towers. (Doc. 61, Attach. 1 ¶¶ 3, 5.) Defendant Marley Management was handling the renovations of Drayton Towers. (Doc. 61 at 2.) Defendants Brown and Croll are each part-owners of companies that held financial interests in Defendant Drayprop (Doc. 10 at 4) and Defendant Marley (Doc. 66 at 3).

Prior to the completion of the renovations, portions of the Drayton Towers building were found to contain asbestos that would require remediation. (Id. at 3.) The discovery resulted in a delay of renovations for approximately nine months. (Doc. 30 at 5.) Because of the delay and subsequent economic downturn, Plaintiffs allege that their investment in the property has lost significant value. (Id.)

On October 13, 2008, Plaintiff filed this action in the State Court of Chatham County. (Doc. 1 ¶ 1.) On July

3

8, 2010, Plaintiffs filed an amended complaint asserting state-law claims for fraud, negligent misrepresentation and breach of contract against Defendants Drayprop, Draypark, Brown, and Croll, as well as seeking damages, punitive damages, and attorney's fees. (Doc. 1, Attach. 41 ¶¶ 18-35.) On June 9, 2011, Defendants removed the case to this Court.[4] (Doc. 1.) On March 30, 2012, this Court granted former Defendant FDIC's motion for summary judgment and dismissed Plaintiff's claims against it. (Doc. 44.) On July 12, 2011, Defendants Drayprop, Draypark, Croll, and Brown filed their present motion for summary judgment (Doc. 9), arguing that each of Plaintiffs claims have not demonstrated reasonable reliance on any statement made by Defendants, that no contract exists between Plaintiffs and any Defendant, and that Plaintiffs have provided no facts that could reasonably support their other claims. (Doc. 9; Doc. 10.) Defendant Croll has filed a separate motion for summary judgment with similar arguments, but additionally contending that he cannot be held personally liable to Plaintiffs. (Doc. 13; Doc. 14.) Defendant Marley has also filed a separate motion for summary judgment arguing that

---

[4] This was Defendants' second removal, as the Court remanded the first because former Defendant FDIC had not been properly substituted as a party prior to removal. (See CV410-298, Doc. 39.)

Plaintiffs' claims are time-barred and that it owed no duty to Plaintiffs. (Doc. 60; Doc. 61.) Because the Court finds that all of Plaintiffs' claims fail on the merits, it need not address the other arguments contained within Defendants' various summary judgment motions.

## ANALYSIS

### I.   STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322

(1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a

6

reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933 (11th Cir. 1989).

II.  <u>ANALYSIS</u>

   A.  <u>Defendants Brown and Croll</u>

   Plaintiff asserts that Defendants Brown and Croll misrepresented that (1) renovations on Drayton Tower would be complete by March 1, 2006; (2) that window frames on the buildings would be polished so that the exterior would have its original appearance; and (3) that Drayton Tower "had been tested and found to be asbestos free."   (Doc. 1, Attach. 41 ¶ 26.)   Plaintiffs also assert that Defendants Brown and Croll breached contracts that existed between them and Plaintiffs.   (<u>Id.</u> ¶ 24.)

   Even assuming such actions occurred, however, Plaintiffs have not shown that Brown and Croll acted as individuals as opposed to members of Defendants Drayprop or Marley.   Personal liability cannot attach to either man because "[a] member of a limited liability company 'is not a proper party to a proceeding . . . against a limited liability company, solely by reason of being a member of the limited liability company.' "   <u>Yukon Partners, Inc. v.</u>

_Lodge Keeper Grp._, 258 Ga. App. 1, 6, 572 S.E.2d 647, 651 (2002) (_quoting_ O.C.G.A. § 14-11-1107(j)). To pierce the LLC liability veil between a company and a member, a claim must go a step further and "show that the defendant disregarded the separateness of legal entities by comingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." _Christopher v. Sinyard_, 313 Ga. App. 866, 867, 723 S.E.2d 78, 80 (2012). Although the issue of veil piercing is typically for the jury to decide, summary judgment is appropriate if "there is no evidence sufficient to justify disregarding the corporate form." _Id._

Here, Plaintiff has presented no facts that suggest either Defendants Drayprop or Marley ever served as the alter ego of Defendants Brown or Croll. Rather, Plaintiffs merely offer that Brown and Croll were involved in the creation and distribution of promotional materials to potential investors. (Doc. 25 at 3.) In addition, Plaintiffs attempt to make an issue out of the fact that when Brown and Croll secured a loan on behalf of Drayprop, the bank's documents noted that it had dealt with the two of them previously. (Doc. 25 at 6.) Finally, Plaintiffs point out that other companies in which Defendant Croll had financial interests were guarantors of the loan, namely

Brothers Trading Holding, LLC and Washco, LLC. (Id. at 6-7.)

Even taken as true, however, these facts do not demonstrate a genuine dispute at to whether Defendants Brown or Croll ever acted on behalf of themselves individually. Plaintiffs admit that when Defendant Croll signed the loan documents, he did so "on behalf of [Brothers Trading Holding, LLC and Washco, LLC.]" (Doc. 25 at 7.) Further, the Court cannot understand how a banks' familiarity with a company's agent could preclude that individual from acting on behalf of the company. Similarly, Defendants Brown and Croll are well within their legal rights to promote the business interests of Defendant Drayprop without incurring personal liability for their actions. Such is, in fact, the entire purpose of a limited liability company. See Yukon, 258 Ga. App. at 6, 572 S.E.2d at 651 (holding that an LLC is a separate legal entity distinct from its members). Plaintiffs do not provide, and the Court cannot find, any legal support for their theories. Instead, they rely on conclusory allegations that the acts demonstrate Defendants' disregard for the corporate form "in an attempt 'to defeat justice, to perpetrate fraud or to evade statutory, contractual or tort responsibility.' " (Doc. 25 at 7 (quoting Walker v.

_Ace Auto Sales & Leasing, Inc._, 294 Ga. App. 267, 269, 668 S.E.2d 877, 879 (2008)).) The Court must disagree.

The Court finds these assertions, supported by neither law nor fact, wholly without merit. It appears abundantly clear that both Defendants were acting simply as employees or owners of separate and distinct legal entities. Accordingly, the Court can discern no reason to disregard a limited liability company member's rightful and normal immunity to personal liability in this case. All claims against Michael Brown individually must be dismissed. Reuban Croll's individual motion for summary judgment (Doc. 13) must be granted.

III. DEFENDANT MARLEY

After a careful review of the pleadings in this action, the Court notes that while the Plaintiffs' amended complaint includes Marley as a defendant in this action, they do not appear to name Defendant Marley in any of their claims. (Doc. 1, Attach. 41.) Plaintiffs' response to Defendant Marley's Motion for Summary Judgment is unhelpful in clarifying the issue, as it merely argues that its claims—whatever they may be—are not time-barred and that Defendant Marley owed some sort of duty to Plaintiffs. (Doc. 68.) Accordingly, because the Court can discern no

claim actually asserted against Defendant Marley, its motion for summary judgment (Doc. 60) must be granted.[5]

## IV. DEFENDANTS DRAYPROP AND DRAYPARK[6]

### A. Breach of Contract

In Georgia, the elements for a breach of contract claim are (1) a breach of the contract; (2) resultant damages; (3) to the party who has the right to complain about the contract being broken. Norton v. Budget Rent A Car Sys. Inc., 307 Ga. App. 501, 502, 705 S.E.2d 305, 306 (2010). "A breach occurs if a contracting party . . . fails to perform the engagement as specified in the contract . . . ." UWork.com, Inc. v. Paragon Techs., Inc., 321 Ga. App. 584, 590, 740 S.E.2d 887, 893 (2013). In other words, to assert a claim for breach of contract, the party against whom the claim is brought must have been a party to the contract. Id. A contract, however, must exist before someone can breach it. At a minimum, valid contracts have four essential elements: (1) parties able to contract; (2) consideration; (3) agreement by the parties

---

[5] To the extent that Plaintiffs meant to assert their other claims of breach of contract, negligent misrepresentation and fraud against Defendant Marley, they still fail for the reasons same reasons stated in this order. See infra Analysis.IV.

[6] Plaintiffs do not allege that Defendant Draypark made any negligent or fraudulent misrepresentation to them. Their only claim against Defendant Draypark is that of breach of contract. (Doc. 1, Attach. 41 ¶ 24.)

11

to the terms of the contract, the essence of which is a meeting of the minds; and (4) a subject matter on which the contract can operate. O.C.G.A. § 13-3-1.

Here, Plaintiffs admit that none of the Defendants were parties to any contract with them in regard to the sale of the Drayton Towers property. (Doc. 30 at 13-14.) Rather, Plaintiffs argue that some contract must have existed between them because Defendants, as developers of the Drayton Towers property, "had an indirect interest in the sale of every unit in the building, even if they were not parties thereto." (Id. at 14.) In addition, because Defendant Drayprop held title to the property before it was sold to Mopper-Stapen and then subsequently sold to Plaintiffs, Plaintiffs argue that Mopper-Stapen acted merely as a "broker" to the transaction and that Defendant Drayprop was the true seller of the property.

However, the Court cannot find, and Plaintiffs do not provide, any legal support for their theories. Even if Defendants did receive some kind of compensation, Plaintiffs have failed to show that any agreement between the parties ever took place because they have offered no facts establishing any other element of a valid contract. Here, as Plaintiffs admit, their only agreement was with non-party Mopper-Stapen. The fact that Defendant Drayprop

previously entered into a sales contract with Mopper-Stapen does not make it a party to any subsequent transaction. Accordingly, because no contract exists between Plaintiffs and Defendants, Plaintiffs' breach of contract claims must fail. See Uwork.com, 321 Ga. App. at 590, 740 S.E.2d at 893 (non-party cannot breach contract).

B. Negligent Misrepresentation

As with Defendants Croll and Brown, Plaintiffs argue that Defendant Drayprop also represented to Plaintiffs that (1) renovations on Drayton Tower would be complete by March 1, 2006; (2) that window frames on the buildings would be polished so that the exterior would have its original appearance; and (3) that Drayton Tower "had been tested and found to be asbestos free." (Doc. 1, Attach. 4 ¶ 19.) Under Georgia law, a claim of negligent misrepresentation much be supported by showing that (1) a defendant negligently supplied false information to foreseeable persons; (2) such persons reasonably relied upon that false information; and (3) such persons experienced economic injury proximately caused by such reliance. Hendon Props., LLC v. Cinema Dev., LLC, 275 Ga. App. 434, 439, 620 S.E.2d 644, 649 (2005).

In support of their claims, Plaintiffs state that the sales pamphlet incorrectly stated that the cooling tower

"had many years left" and also included an electrical systems proposal by an unknown author. (Doc. 30 at 8-9.) Plaintiffs also contend that Defendant Drayprop had previously been advised that the building could contain asbestos. (Id. at 14.) Accordingly, Plaintiffs argue, Defendants should have known that the building contained asbestos and would not be completely renovated by the March 1, 2006 deadline.[7]

### 1. Renovations

With regard to the building's renovations, there is also no evidence to indicate that the identity of the electrical proposal's author has any bearing on this case, or that the fact that the cooling tower needed a switch replaced somehow negates the statement that it had "many years of life left." (Doc. 30 at 8-9.) Even assuming that Defendant Drayprop indeed made statements regarding the building that turned out to be false, Plaintiffs have still provided no evidence to show that Defendant Drayprop should reasonably have known that these facts would delay the completion of the renovations. Rather, Plaintiffs merely

---

[7] Plaintiffs make no argument concerning the polishing of the building's windows, and appear to have abandoned this claim. However, even if the claim remains, it fails for the same reason as Plaintiffs' other allegations that Defendant Drayprop negligently misrepresented the timeline for renovations.

14

offer that the "extremely wide gap between what was promised and what was delivered strongly implies that Defendants knew, at the time the representations were made, that at least some portion of the promised work would not be performed by the specified date." (Id. at 10-11.) However, given the unexpected and understandable nature of the delays in the renovation schedule, the Court can discern no reason why the delays would imply anything of the sort.

Plaintiffs go to great lengths to show the falsity of Defendant's representations with regard to the timeline for completion of renovations, but it nevertheless remains the case that Plaintiffs offers nothing more than conclusory allegations to support their assertion of negligent misrepresentation. Because Plaintiffs fail to demonstrate that Defendants should have known their representations were false, Plaintiffs' negligent misrepresentation claims regarding the completion date of the renovations also fail as a matter of law.

### 2. Asbestos

With regard to the presence of asbestos in the building, it is not clear to the Court that Defendant Drayprop even made a false statement. As stated before, Plaintiffs' complaint only alleges that Defendant

misrepresented "that the Drayton Towers building had been tested and found to be asbestos free." (Doc. 1, Attach. 41 ¶ 19.) Plaintiffs attempt to base their claims on Defendant Brown allegedly representing "that the building had been tested for asbestos, [and] that the tests had come back negative . . . ." (Doc. 30 at 9.) These statements appear to be true. All evidence in the record indicates that prior to the discovery of asbestos on May 17, 2006, all previous testing for asbestos had come back negative. (Id. at 5; Doc. 66, Attach. 5.) Accordingly, the Court does not find that Defendant Brown, acting on behalf of Defendant Drayprop, negligently misrepresented the status of the building simply because it was ultimately discovered to require asbestos abatement.

Plaintiffs' negligent misrepresentation claim hinges on one additional statement allegedly made by Defendant Brown: namely that the building had been "certified as 'asbestos free.' " (Id. at 4.) At the time the statement was allegedly made, Defendant Drayprop admits that the building, although unknown to it at the time, did contain asbestos. (Doc. 10 at 5 n.22.) However, the Court is not persuaded that this statement, even if it was uttered, can satisfy the elements of a negligent misrepresentation claim. First, it does not appear that "certified asbestos

16

free" is an actual term or status a building can obtain. (Doc. 28, Attach. 6 at 97-98.) As such, the Court finds it difficult to see how the statement could misrepresent any material fact to Plaintiffs because the representation itself as no value. Even if the Court were to take the statement at its purely face value—finding that the statement is inherently false, because naturally the building could not have a certification that does not exist—Plaintiffs' have failed to show how they could have reasonably relied on such a statement.

However, assuming the statement did offer some value and given the context in which the statement was allegedly made, the Court finds that the phrase is at most mere sales puffery-akin to calling the building "Grade-A," "A guaranteed winner," or some other empty sales accolade. Accordingly, Plaintiffs have a duty to take at least some steps to protect themselves. See Hicks v. Sumter Bank & Trust Co., 269 Ga. App. 524, 527, 604 S.E.2d 594, 596-97 (2004) (plaintiff may not rely on general statements of quality as true, but must determine truth for himself or herself). A plaintiff's failure to verify the authenticity or accuracy of a statement will bar a negligent misrepresentation claim. Real Estate Intern., Inc. v. Buggay, 220 Ga. App. 449, 451, 469 S.E.2d 242, 245 (1996).

17

"The law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity." Fincher v. Bergeron, 193 Ga. App. 256, 259, 387 S.E.2d 371, 373 (1989). Where both parties have equal access to the pertinent information, and the subject of a sale is open to inspection, a purchaser who does not take advantage of these opportunities cannot claim "that he was deceived by the vendor's representations or lack thereof." Id.

In an effort to show that they met their burden of investigating the statement's authenticity, Plaintiffs argue that they did ask to see a copy of the asbestos test results, but one was never provided. (Doc. 30 at 11 n.4.) Far from being evidence of their due diligence, however, the Court finds that this only further demonstrates that Plaintiffs did not reasonably rely on the representation at all. It is a bizarre and contradictory claim to suggest that Plaintiffs relied on a statement when a conspicuous lack of its confirmation did not in any way dissuade them from completing the sale. See Benefit Support, Inc. v. Hall Cnty., 281 Ga. App. 825, 835, 637 S.E.2d 763, 773 (2006) ("[P]laintiff must 'rely upon the information' that was supplied." (quoting Robert & Co. Assocs. v. Rhodes-Haverty P'ship, 250 Ga. 680, 681, 300 S.E.2d 503, 504

(1983))); see also White v. BDO Seidman, LLP, 249 Ga. App. 668, 671-72, 549 S.E.2d 490, 494 (2001) (no presumption of reliance in securities fraud and negligent misrepresentation case).

Plaintiffs have not demonstrated they undertook any other type of investigation into the accuracy of the statement or the environmental quality of the property. Plaintiffs did not, for instance, inquire as to who or what issued the purported certification, or what the certification could possibly have entailed. Clearly, even the most minimal of inquiries would have revealed the statement to be inconsequential, as of course Defendant Draypop could not provide confirmation of a non-existent certification. Despite their apparent concerns about the possibility of asbestos, however, Plaintiffs neither conducted any tests of the property, nor examined any of Defendant Drayprop's inspection reports or test results prior to purchasing. (Doc. 9, Attach. 9 at 51-52.) Quite simply, even if the Court were to assume that Plaintiffs actually relied on the statement, they have nonetheless failed in showing they were reasonable in doing so as they assessed neither the accuracy of the statement nor the environmental status of the property itself.

Accordingly, the Court finds that Defendant Browns' alleged statements concerning asbestos cannot sustain a negligent misrepresentation action against Defendant Drayprop. To a large degree, the statements were, in fact, true. The only potential false statement, concerning the building's purported "certified asbestos-free" status, appears entirely meaningless or at the most, simply sales puffery. As such, even if the Court were to assume that Defendant Drayprop negligently made a false statement regarding asbestos in the building, Plaintiffs have not produced evidence showing they relied on the statement, nor does the Court find it would have been reasonable for them to do so. Accordingly, Plaintiffs' claims on this matter must fail.[8]

---

[8] The Court also notes that Plaintiffs have provided no evidence to show the alleged misrepresentations were the proximate cause of any damages they suffered. The only evidence concerning damages cited by Plaintiffs is the testimony of Richard Mopper, who stated that "[i]f the economy hadn't changed I don't think there would be an issue of selling units in the building today." This statement does not support Plaintiffs argument that value was lost due to "substantial delays and negative publicity." (Doc. 30 at 5.) Although the asbestos abatement process may have prolonged construction, it appears abundantly clear that the loss of value in Plaintiff's property was dependent on the economy as a whole, not Defendants' alleged statements regarding the asbestos. However, the issue is moot as Plaintiffs cannot satisfy the other elements of their negligent misrepresentation claim.

C.  Fraud

To support his claim of fraudulent misrepresentation, Plaintiffs must show that (1) Defendant Drayprop made false representations; (2) it knew the representations were false at the time they were made; (3) it made the representations intending to deceive Plaintiff and induce him to rely on the representations; (4) Plaintiff justifiably relied on the representations; and (5) the representations resulted in damages to Plaintiff.  See Grand Master Contracting, L.L.C. v. Lincoln Apartment Mgmt. Ltd. P'ship, 314 Ga. App. 449, 451, 724 S.E.2d 456, 458 (2012).  As described above, however, Plaintiffs have offered no facts showing that Defendant knew its representations were false.  No evidence has been presented showing that Defendant Drayprop knew the renovations would be delayed, and it is clear that no one, including Defendant Drayprop, had affirmative knowledge of asbestos's presence in the building until May 17, 2006 when the Georgia Environmental Protection Division sent a letter to Defendant Brown indicating that the building indeed did contain asbestos.  (Doc. 66, Attach. 5.)  Accordingly, for largely the same reasons that Plaintiffs' negligent misrepresentation claims are without merit, the Court finds Plaintiffs' fraud claims for fraudulent misrepresentation also fail as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment (Doc. 9; Doc. 13; Doc. 60) are **GRANTED.** Plaintiffs have not shown any genuine issue of material fact to support their claims of breach of contract, negligent misrepresentation or fraud. As a result, Plaintiffs' other claims for damages, punitive damages and attorney's fees necessarily fail. Accordingly, Plaintiffs' case is hereby **DISMISSED.** The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 29th day of September 2014.

WILLIAM T. MOORE, JR
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA